[Cite as *State v. Fishburn*, 2021-Ohio-2303.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| KEVIN JAMES FISHBURN | : | Case No. 2020 CA 00145 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:           Appeal from the Court of Common
                                                            Pleas, Case No. 2020 CR 0203



JUDGMENT:                                      Affirmed



DATE OF JUDGMENT:                       July 6, 2021



APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

KYLE L. STONE                               D. COLEMAN BOND
PROSECUTING ATTORNEY            116 Cleveland Avenue NW
                                                          Suite 600
By: LON'CHERIE' D. BILLINGSLEY       Canton, OH  44702
      110 Central Plaza South - Suite 510
      Canton, OH 44702-1413

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Kevin James Fishburn appeals the September 10, 2020 judgment of Stark County Court of Common Pleas which reflects his conviction for one count of cruelty to companion animals and imposition of a 12-month sentence. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On January 14, 2020, Dustin Shilling was working in southern Stark County when he saw a black German Shepard dog run out into the road. When he stopped and got out of his truck, the dog ran up to him. Shilling knelt down to pet the dog and noticed it had blood on its face. Because Shilling could not put the dog in his work truck, he flagged down another motorist to help.

{¶ 3}   A man traveling with his daughter stopped and Shilling asked them to take the dog to veterinarian Dr. Mike Sparling. The pair agreed and Shilling arranged for payment. The dog was very friendly with Shilling as well as the good Samaritans.

{¶ 4}   Dr. Sparling examined the dog and noted a wound on its face and chest as well as a lot of missing fur. Sparling suspected the dog had been struck by a car. X-rays, however, revealed bone fragments as well as metal fragments near the wounds leading Sparling to conclude someone had shot the dog. Sparling sutured the wounds and left a drain.

{¶ 5}   The following day deputies from the Stark County Dog Warden's Office picked the dog up from Sparling's office. The dog showed no aggression towards any of its handlers from the dog warden's office. It required a second surgery which was performed by Sheriff's Office veterinarian Dr. Stacey Bridges.

{¶ 6} The dog had a microchip which indicated its owner was Charles Adkins. Deputies contacted Adkins who stated he had rehomed the dog several weeks prior with Appellant herein. When contacted by Deputy Jon Barber, Appellant lied stating he returned the dog to Adkins a week ago.

{¶ 7} Given this development, Major Charles Stantz of the Stark County Sheriff's office contacted Appellant and Appellant told Stantz a different story. Appellant stated he took the dog to Bear Creek, a recreation area in southern Stark County, where he could let the dog run off leash. Appellant stated while they were there, the dog came after him in an aggressive manner so he shot it. Appellant stated he then removed the dog's collar and left it for dead.

{¶ 8} Upon hearing about the incident, Shannon Mohney, an acquaintance of Appellant, contacted the sheriff's office and spoke with Deputy Barber. Mohney had interacted with Appellant and the dog on approximately five occasions, had observed no indications of aggression towards people, and described the dog as "insanely loving." She had observed Appellant playing fetch with the dog off leash at an open area by his home and also at a local park. Mohney indicated that while the dog was friendly with people, it did not get along with other dogs. Mohney provided photos and videos to Barber which showed the dog obeying Appellant's commands as well as Appellant cuddling and kissing the dog. Based on her interaction with the animal, Mohney advised she did not believe it would attack a human being.

{¶ 9} On February 18, 2020, the Stark County Grand Jury returned an indictment charging Appellant with one count of cruelty to companion animals pursuant to R.C.

959.131(C)(E)(2), a felony of the fifth degree. Appellant pled not guilty to the charge and opted to proceed to a jury trial which began September 2, 2020.

{¶ 10} The state presented evidence from Shilling, Stark County Dog Warden Jon Barber, Major Charles Stanz, Dr. Sparling, Dr. Bridges, and Mohney.

{¶ 11} Appellant presented evidence from his father, Jeff Fishburn and also testified on his own behalf.

{¶ 12} Jeff Fishburn testified he took care of the dog while Appellant was away for a weekend with the Army National Guard. He stated he found the dog aggressive towards people and other animals, unpredictable, and generally ill-behaved.

{¶ 13} Appellant testified he is a former military member and was a police officer with Summa Heath Systems Police Department. He did not grow up with animals but became interested in owning a dog following his exposure to military dogs. He adopted "Zues" in October of 2019. Appellant stated the family he adopted Zues from indicated he had some minor obedience issues. Appellant later noted Zues chewed on things and would not sit for his food but indicated he make some headway correcting these issues. Appellant described Zues' behavior as good one week and terrible the next.

{¶ 14} Appellant testified he went to Bear Creek on the day in question to avoid other people and animals so he could work with Zues without any distractions, and so Zues could run free.

{¶ 15} Upon arrival, Appellant testified he turned Zues loose in a field. Zues took off running and barking. Appellant stated was the same aggressive barking tone Zues displayed when another dog was around. Appellant testified he went to Zues to try to calm him down, but when he reached for Zues' collar Zues lunged at him and tried to bite his

hand. Zues continued to bark and growl at Appellant as Appellant backed away. Appellant stated he began to run for his truck, but then realized he wouldn't be able to outrun Zues. At that point Appellant stated Zues began lunging at him again, so he drew his service weapon, which he carried even when he was off duty, and shot Zues. Appellant testified he was absolutely certain Zues was going to maul or kill him.

{¶ 16} Immediately afterwards, Appellant stated he was shocked and "freaking out," so he removed Zues' collar and left the dog for dead. He admitted he lied to Deputy Barber about what happened, but then later admitted to Major Stantz he had shot Zues. Appellant also admitted he had lied to friends telling them Zues had been hit by a car. On cross-examination Appellant also admitted he was behind on rent, facing the possibility of needing to move in with his parents, and would not be able to take Zues with him.

{¶ 17} After hearing all the evidence and deliberating for two hours, the jury found Appellant guilty of cruelty to companion animals. He was subsequently sentenced to 12 months local incarceration.

{¶ 18} Appellant filed an appeal and the matter is now before this court for consideration. He raises five assignments of error for our review as follow:

I

{¶ 19} "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED"

II

{¶ 20} "TH APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND MUST BE REVERSED"

III

{¶ 21} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6 TH AND 14TH AMMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

IV

{¶ 22} "APPELLANT WAS DEPRIVED DUE PROCESS AND A FAIR TRIAL THROUGH INCOMPLETE, INACCURATE, AND MISLEADING JURY INSTRUCTIONS?"

V

{¶ 23} "THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO DISMISS FOR WANT OF SPEEDY TRIAL"

III, IV

{¶ 24} For ease of discussion, we address some of Appellant's assignments of error together and out of order. In his fourth assignment of error, Appellant argues he was deprived due process and a fair trial because the jury was improperly instructed on self-defense, and further argues he was deprived effective assistance of counsel because counsel requested the faulty instruction. We disagree.

{¶ 25} Following closing arguments and before the trial court instructed the jury, a discussion took place regarding Appellant's desire to include a self-defense instruction. Transcript of trial volume II (T. (II)) 67-71. During this discussion the trial court noted its research on the matter, and its conclusion that the self-defense statute refers to a "person's use of force against another," meaning another human being, not a dog. T. (II)

71. The trial court nonetheless permitted the instruction requested by Appellant and crafted by Appellant. T. (II) 76. The instruction read as follows:

> Self-defense. The defendant claims to have acted in self-defense. To establish his - - that he was justified in using force likely to cause a death or great bodily harm. The defendant must prove by the greater weight of the evidence that: A, he was not at fault in creating the situation giving rise to the dog attack;
>
> And, B, he had reasonable grounds to believe and an honest belief, even if mistaken, he was in immediate danger of bodily harm.
>
> Once the defendant produces evidence tending to support that he acted in self-defense, the state bears the burden of proving that the defendant did not act in self-defense by proving the absence of one of the elements of self-defense.

{¶ 26} T (II) 81-82. The state did not object to the instruction.

{¶ 27} Appellant requested the instruction he now complains of. *In Walker v. State*, 5th Dist. No. 2007CA00037, 2007-Ohio-5262 at ¶ 51 we noted:

> In reviewing a claim on appeal that a jury instruction requested by the defendant and given by the trial court was reversable error, the Supreme Court of Washington held that under the "invited error doctrine," a party may not request a jury instruction and then later complain on appeal that requested instruction was given.

*State v. Gentry* (1995), 125 Wash.2d 570, 646-647, 880 P.2d 1105, 1150. However, the Court further held that the doctrine of invited error did not preclude the Court from reviewing the error in connection with an ineffectiveness of counsel argument. *Id*. The Court reasoned that "this will ensure that any error which was indeed prejudicial could be grounds for reversal. The additional factor of actual prejudice required for a successful ineffectiveness of counsel claim will in turn insure that the issue is of serious dimension." *Id*. at 647, 880 P.2d at 1150.

{¶ 28} We agree with Appellant insofar as the given instruction being an inaccurate instruction in light of amendments to R.C. 2901.05(B), the self-defense statute. Effective March 28, 2019, revisions to R.C. 2901.05 provide a defendant no longer bears the burden of establishing the elements of self-defense by a preponderance of the evidence. R.C. 2901.05(B)(1); see *State v. Carney*, 10th Dist. No. 19AP-402, 2020-Ohio-2691, ¶ 31. Instead, the self-defense statute now "place[s] the burden on the prosecution to disprove at least one of the elements of self-defense beyond a reasonable doubt." *Carney* at ¶ 31.

{¶ 29} Here, however, Appellant invited any error in the self-defense instruction by requesting said instruction. The invited error doctrine provides that "a party is not permitted to take advantage of an error that he himself invited or induced the court to make." *Davis v. Wolfe*, 92 Ohio St.3d 549, 552, 751 N.E.2d 1051 (2001). We therefore reject Appellant's fourth assignment of error.

{¶ 30} We next turn to Appellant's third assignment of error which alleges his trial counsel rendered ineffective assistance by requesting the instruction.

{¶ 31} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 32} Appellant makes two arguments pertaining to ineffective assistance of counsel. First, he argues counsel failed to object to the jury instruction given and should have requested the current self-defense instruction in light of the recent amendment of 2901.05(B), the self-defense statute. Appellant has not, however, provided any argument to support a finding that R.C. 2901.05(B) applies self-defense against a dog. As the trial court noted, the statute discusses self-defense against "another," meaning "another person" or a "different person or thing of the same type." T. (II) 71-73. Like the trial court, our research yields no authority to support a conclusion that R.C. 2901.05(B) is applicable to self-defense against a dog, and Appellant points to none.  We therefore agree with the trial court's position; R.C. 2901.05(B) does not apply to the facts of this case – self-defense against a dog.

{¶ 33} Appellant further argues counsel should have asked for an instruction pursuant to R.C. 955.28. That section states in relevant part:

(A)     Subject to divisions (A)(2) and (3) of section 955.261 of the
Revised Code, a dog that is chasing or approaching in a menacing
fashion or apparent attitude of attack, that attempts to bite or
otherwise endanger, * * * can be killed at the time of that chasing,
threatening, harassment, approaching, attempt, killing, or injury. If, in
attempting to kill such a dog, a person wounds it, the person is not
liable to prosecution under the penal laws that punish cruelty to
animals. Nothing in this section precludes a law enforcement officer
from killing a dog that attacks a police dog as defined in section
2921.321 of the Revised Code.

{¶ 34} The state argues this section applies only in civil actions, but provides no support for that argument. R.C 955.28 provides an affirmative defense to a charge of cruelty to animals if the animal chases or approaches the defendant in a menacing manner. In *State v. Hurst*, 4th Dist. Gallia No. 98CA08, 1999 WL 152262, the court found as much:

"* * * R.C. 955.28 does not bar the prosecution of a person for animal
cruelty who kills or injures a dog in self-defense. Rather, R.C. 955.28
provides an affirmative defense to be used in such a prosecution.
Whether the accused is entitled to acquittal because of the
affirmative defense is to be resolved by the finder of fact. See, e.g.,

*State v. Hayes* (Feb. 2, 1988), Franklin App. No. 87AP–700,

unreported."

{¶ 35} We likewise find this section applicable to a self-defense claim in a prosecution for cruelty to companion animals and further find counsel for Appellant should have raised an affirmative defense pursuant to R.C. 955.28 rather than R.C 2901.05(B). Nonetheless, we do not find counsel's failure to do so prejudicial.

{¶ 36} The jury in this matter was still provided with an option, even if erroneous, to find Appellant had shot his dog in self-defense, and it rejected that option. We do not find the affirmative defenses so drastically different as to have impacted the jury's conclusion in this matter. The state in this matter produced evidence to show Appellant did not act in self-defense. Appellant then advanced evidence to show he did and the jury ultimately rejected Appellant's version of events. We therefore find Appellant was not prejudiced by counsel's assertion of R.C. 2901.05(B) rather than R.C. 955.28.

{¶ 37} Appellant's third and fourth assignments of error are overruled.

I, II

{¶ 38} We address Appellant's first and second assignments of error together. In his first and second assignments of error Appellant argues his conviction for cruelty to companion animals is against the manifest weight and sufficiency of the evidence. Specifically, Appellant argues the state failed to meet its burden to prove beyond a reasonable doubt that he did not shoot Zues in self-defense pursuant to R.C. 2901.05(B). We disagree.

{¶ 39} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 40} Appellant was charged pursuant to R.C. 959.131(C)(E)(2) which states "[n]o person shall knowingly cause serious physical harm to a companion animal." R.C. 959.99(E)(2) provides that "[w]hoever violates [R.C. 959.131(C)] is guilty of a felony of the fifth degree."

{¶ 41} We have found above R.C. 2901.05(B)(1) inapplicable to the facts of this case. Even if that were not true, however, the state advanced sufficient evidence to prove Appellant did not have an honest belief, even if mistaken, that he was in immediate danger

of bodily harm. Every witness for the state who interacted with Zues testified he was good with people, but not other dogs.

{¶ 42} Shilling testified Zues ran right up to him when he stopped to get the dog out of the road and further allowed Shilling to pet and examine him. T. (I) 212-213. He described Zues as "super friendly." T. (I) 214. Deputy Barber testified numerous employees of the dog warden interact with Zues without issue (Zues was still in the custody of the dog warden at the time of trial), and that Zues was reactive only to other dogs, not people. T. (I) 133-134, 144.

{¶ 43} Two veterinarians treated Zues. Dr. Sparling saw Zues shortly after he was shot and sutured his wounds. T. (I) 172. Dr. Bridges takes care of animals in the custody of the dog warden and preformed a surgery on Zues to remove bone fragments in his lower jaw. T. (I)195-197. Sparling testified that while Zues was frightened when brought to his office, he had no difficulty sedating Zues in order to explore his injuries. T. (I) 174-175. Bridges testified that in Zues' time in the custody of the dog warden, he never showed any aggression to her or her staff, only other dogs. T. (I) 201.

{¶ 44} Shannon Mohney interacted with Zues on approximately five occasions and found Zues "insanely loving." T. (I) 13. She stated the dog showed no signs of aggression towards her, but stated Zues was not good with other dogs. T. (I) 13, 15. She possessed photos and videos of Zues following Appellant's commands and Appellant snuggling and cuddling the dog. T. (I) 16-17. These were shown to the jury. T. (II) 18-20.

{¶ 45} Appellant's father, who took care of Zues for a weekend testified Zues was ill-behaved, aggressive towards people and animals, and unpredictable. T. (II) 27-29. Appellant testified that in the three months he owned Zues, the dog was good one week

and terrible the next. T. (II) 44. He stated he and Mohney had tried to get together with their dogs to get Zues more socialized to other dogs, but Zues went after Mohney's dog and he had to separate them. T. (II) 48. He admitted he lied to law enforcement and his friends about what happened to Zues and that he was facing the possibility of eviction and being unable to take Zues with him. T. (II) 60-61.

{¶ 46} Appellant testified that on the day in question, after he set Zues free at Bear Creek, the dog began barking aggressively and circling him. When he reached out for Zues' collar, the dog tried to bite his hand. Appellant stated the dog was growling, barking, and his hair was standing up. He testified he shot Zues when the dog lunged at him and believed the dog was dead. He stated he took the collar off Zues and left the scene. T. (II) 51-52.

{¶ 47} There were no witnesses to the shooting. The outcome of Appellant's trial, therefore, hinged on the jury's credibility determinations. Appellant admitted he had lied about what happened to Zues not only to law enforcement, but also to friends. He further testified he had left the dog for dead, yet Zues was healthy enough to be running along the road shortly after the shooting.

{¶ 48} We find the state produced sufficient evidence to support a conviction for cruelty to companion animals and to disprove any affirmative defense of self-defense under either R.C. 2901.05 or R.C. 955.28. We additionally find jury did not lose its way in finding the state's witnesses credible, discrediting the testimony of Appellant and his father, and rejecting appellant's version of events.

{¶ 49} The first and second assignments of error are overruled.

V

{¶ 50} In his fifth and final assignment of error, Appellant argues the trial court erred when it denied his motion to dismiss for want of a speedy trial. We disagree.

{¶ 51} Speedy-trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus (1980).

{¶ 52} R.C. 2945.71(C)(2) requires "[a] person against whom a charge of felony is pending * * * be brought to trial within two hundred seventy days after his arrest." R.C. 2945.71(E) provides "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." In *State v. McDonald*, 48 Ohio St.2d 66 (1976), the Ohio Supreme Court held the triple count provision applies "only to those defendants held in jail in lieu of bail solely on the pending charge." *Id.* at syllabus.

{¶ 53} Appellant was arrested on January 22, 2020. He posted bond and was released from jail on January 23, 2020. Appellant remained free on bond until April 20, 2020 when his bond was revoked for having contact with animals and guns in violation of the terms of his bond. He remained incarcerated through the date of trial on September 3, 2020.

{¶ 54} Appellant acknowledges the fact that Ohio House Bill 197 tolled all time limitations under the Revised Code from March 9, 2020 until July 30, 2020 due to the

global Covid-19 pandemic. He does not dispute the trial court's finding that due to this tolling event, the state had until October 11, 2020 to bring Appellant to trial. His argument instead is that he should have been released from custody after he had been held in lieu of bail for 90 days.

{¶ 55} Appellant provides no authority to support such a conclusion. Moreover, our examination of the record reveals Appellant never raised this argument with the trial court. We therefore decline to address the issue on appeal.

{¶ 56} The final assignment of error is overruled

{¶ 57} The judgment of the Stark County Court of Common Pleas is affirmed.


By Wise, Earle, J.

Baldwin, P.J. and

Gwin, J. concur.


EEW/rw